
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HIGHWAY 82/FANNIN JOINT | § | Case No. 11-43658 |
| VENTURE, | § | (Chapter 11) |
| | § | |
| Debtor. | § | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | § | |
| | § | |
| HIGHWAY 82/FANNIN JOINT | § | |
| VENTURE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Proc. No. 12-4041 |
| | § | |
| CAPITAL ONE BANK, N.A. and | § | |
| MARK RAGON, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION REGARDING DEFENDANT CAPITAL
ONE BANK, N.A.'S MOTION TO DISMISS**

Defendant Capital One Bank, N.A. moves to dismiss this proceeding pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7052. Plaintiff Highway 82/Fannin Joint Venture opposes the motion. The Court exercises its core jurisdiction over this proceeding, *see* 28 U.S.C. §§ 157(b)(2) and 1334, and, for the reasons discussed in this memorandum opinion, concludes that the bank's motion should be granted. This memorandum opinion constitutes the Court's findings of fact and conclusions of law. *See* FED. R. BANKR. P. 7052.

**I. PROCEDURAL BACKGROUND AND ALLEGED FACTS**

Plaintiff Highway 82/Fannin Joint Venture filed a petition for relief under chapter 11 of the Bankruptcy Code on December 15, 2011. Plaintiff initiated this adversary proceeding on March 27, 2012. Plaintiff's only asset is a 243-acre parcel of property that is the subject of this adversary proceeding.

Plaintiff alleges the following facts in its complaint. On July 7, 2006, Mark Ragon executed a promissory note in favor of Defendant in the principal amount of $340,000. On the same date, Ragon executed a Deed of Trust providing Defendant with a lien on the 243 acres to secure his payment obligations under the note. In addition, the Deed of Trust contained a cross-collateralization clause whereby the property served as additional collateral for any and all obligations owed by Ragon to the bank.

On January 3, 2007, Plaintiff executed a promissory note in favor of Ragon in the principal amount of $340,000, for the purchase of the 243 acres. Ragon retained a lien on the property to secure Plaintiff's payment obligation to him pursuant to a General Warranty Deed with Vendor's Lien dated January 3, 2007. Plaintiff was aware of the bank's prior lien on the property and the cross-collateralization provision in the Deed of Trust. Plaintiff, however, did not believe the bank would apply the cross-collateralization clause to the property in light of its acquisition by Plaintiff. Plaintiff believed the bank would release its lien on the property once Plaintiff completed making payments to Ragon.

Plaintiff did not assume Ragon's obligations to the bank. Rather, Plaintiff made payments on its debt to Ragon and paid the property taxes relating to the 243 acres. The bank, at some point, became aware that Plaintiff had acquired the property from Ragon.

Plaintiff made all payments due to Ragon but, at some point, Ragon defaulted on his obligations to the bank.

The bank foreclosed upon other properties securing Ragon's obligations to the bank. As of the close of business on January 31, 2012, more than $500,000 remained due and owing to the bank. As of January 31, 2012, $356,225.94, plus interest, remained due and owing on Ragon's promissory note to the bank with respect to the 243 acres.

The bank attempted to foreclose on the 243 acres. Plaintiff offered to pay off its note to Ragon in exchange for a release of the bank's lien on the property. Alternatively, Plaintiff offered to pay off Ragon's obligation to the bank with respect to the property in exchange for a release of the bank's lien. The bank, however, refused to release the lien until all of Ragon's obligations to the bank were paid in full.

In its adversary complaint, Plaintiff seeks a declaratory judgment that Plaintiff is entitled to a release of the bank's lien on the 243 acres after Plaintiff pays the balance Ragon owes to the bank with respect to the 243 acres. Plaintiff also requests its attorneys' fees and costs pursuant to § 37.009 of the Texas Civil Practices and Remedies Code, which provides for an award of fees and costs in a declaratory judgment action. Plaintiff has attached a copy of the General Warranty Deed with Vendor's Lien to its complaint. The bank, in response, seeks to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6). The bank has attached a copy of the Deed of Trust to its motion.

**II. Analysis**

    **A. The Rule 12(b)(6) Standard**

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded facts as true and view those facts in the light most favorable to the

plaintiff. *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008). The pleading standards are derived from Federal Rule of Civil Procedure 8(a)(2), which states that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, a complaint must contain facts that are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The complaint must have "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Id.*

The Supreme Court in *Ashcroft v. Iqbal* explained that *Twombly* promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. *Id.,* 556 U.S. 662, 679 (2009). First, the court must identify those pleadings that are not supported by factual allegations, "because they are no more than conclusions, [and] are not entitled to the assumption of truth." *Id.* Second, upon identifying well-pleaded factual allegations, the court will "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the bank is liable for the misconduct alleged." *Id.* at 663. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius,* 635 F.3d 757, 763 (5th Cir. 2011) (internal quotation marks and citation omitted).

4

Documents that the bank attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id.* at 499.

### B. Estoppel

Plaintiff requests a declaratory judgment based upon a state law theory of estoppel. Plaintiff's complaint, however, does not specify whether Plaintiff is seeking to establish grounds for equitable estoppel or quasi estoppel. The doctrine of equitable estoppel requires the party asserting it to establish: "(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy,* 962 S.W.2d 507, 515–16 (Tex. 1998). Quasi estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. *Lopez v. Munoz, Hockema & Reed, LLP,* 22 S.W.3d 857, 864 (Tex. 2000). This form of estoppel applies when it would be unconscionable to allow a person to maintain a position inconsistent with the one in which he acquiesced or accepted a benefit. *Id.*

Plaintiff has not alleged any active misrepresentation or concealment by the bank in connection with Plaintiff's purchase of the 243 acres. Plaintiff has not alleged that the bank communicated with Plaintiff about the cross-collateralization provision prior to the

purchase. Indeed, Plaintiff alleges the bank was not even aware of the purchase until some time after it occurred. Plaintiff appears to be proceeding on a theory of acquiescence or quasi-estoppel.

In response to the bank's motion to dismiss, Plaintiff argues that the bank acquiesced in the sale to Plaintiff by failing to enforce the "due on sale" clause in the bank's Deed of Trust with Ragon and by accepting the proceeds of Ragon's sale to Plaintiff for five years. Plaintiff asserts that the bank's attempt to use the cross-collateralization clause to obtain repayment of debts Ragon incurred after the sale to Plaintiff is inconsistent with its acquiescence. Plaintiff also argues that the bank's reliance on the cross-collateralization clause is unconscionable since the bank did not notify Plaintiff of the new debts Ragon was incurring or that the bank intended to rely on the cross-collateralization clause for repayment of all of Ragon's obligations to the bank.

With respect to Plaintiff's first argument, the bank did not acquiesce to the sale, because the bank did not know it had occurred. With respect to the bank's alleged failure to enforce the "due on sale" clause, Plaintiff has failed to allege facts showing any inconsistent position taken by the bank. The bank did not seek to enforce the "due on sale" clause in its Deed of Trust with Ragon following its alleged discovery of the sale to Plaintiff, and the bank is not now seeking to enforce that provision.

Ragon was bound to make payments to the bank before and after the sale to Plaintiff. His obligation was not altered by the sale except, under the facts alleged in the complaint, Plaintiff provided Ragon with the source of funds with respect to the note secured by the 243 acres. Plaintiff has not alleged that the bank is seeking to avoid any of its obligations under its agreements with Ragon while continuing to accept payment

6

from Plaintiff.  *See Vessels v. Anschutz Corp.*, 823 S.W.2d 762 (Tex. App. -- Texarkana 1992) (holding that quasi estoppel did not apply where defendant was not seeking to accept the beneficial part of a transaction and repudiate the disadvantageous part).

With respect to Plaintiff's argument that the bank's reliance on the cross-collateralization clause is unconscionable, Plaintiff was aware of the cross-collateralization provision in the Deed of Trust between Ragon and the bank when it entered into the purchase agreement with Ragon.  Plaintiff was in a position to protect itself, but took no action to do so.  "Equity aids the diligent and not those who slumber on their rights."  *See Callahan v. Giles,* 155 S.W.2d 793, 795 (Tex. 1941).  Furthermore, Plaintiff has not provided this Court with any authority establishing that the bank had a duty to inform Plaintiff of the cross-collateralized debts Ragon continued to incur after Ragon's sale of the 243 acres to Plaintiff.  In the absence of a duty to act, silence or failure to act is not a basis for estoppel.  *See A. R. Clark Investment Company v. Green*, 375 S.W.2d 425, 435 (Tex. 1964) (discussing estoppel under Texas law); *Terrell Hills Baptist Church v. Pawel*, 286 S.W.2d 204 (Tex. Civ. App. -- Austin 1956) ("[I]n order for an estoppel based on silence or inaction to be available as a defense "There must be some element of turpitude or negligence connected with the silence or inaction by which the other party is misled to his injury.") (citation omitted).

Finally, Ragon was the bank's borrower, and accepting payments from him was entirely consistent with the lender-borrower relationship.  Plaintiff may have hoped the bank would waive the cross-collateralization provision and grant a partial release of liens when Plaintiff paid Ragon in full, but Plaintiff's hope is not actionable.  *See Neiman-Marcus Group, Inc. v. Dworkin*, 919 F.2d 368, 371 (5th Cir. 1990) (holding that where

defendant retains his contractual rights, plaintiff's "wishful thinking to the contrary will not dissolve rights expressly secured by contract"). Plaintiff has not alleged any misrepresentation by the bank upon which Plaintiff relied. The bank did not receive, and is not seeking to obtain, anything that it is not entitled to receive under its Deed of Trust with Ragon. The bank's acceptance of payments from Ragon, who Plaintiff alleges obtained the funds from Plaintiff, is not inconsistent with the bank's enforcement of the cross-collateralization clause upon Ragon's default. The Court, therefore, concludes that Plaintiff has failed to state a plausible claim for quasi estoppel under Texas law.

### C. Plaintiff's Request to Amend

In its opposition to the bank's motion to dismiss, Plaintiff requests leave to amend its complaint in the event the Court finds that Plaintiff has failed to state a plausible claim. As a general matter, courts should grant leave to amend pleadings "freely ... when justice so requires." FED.R.CIV.P. 15(a). Normally, "leave to amend is to be granted liberally unless the movant has acted in bad faith or with a dilatory motive, granting the motion would cause prejudice, or amendment would be futile." *Jebaco Inc. v. Harrah's Operating Co. Inc.,* 587 F.3d 314, 322 (5th Cir. 2009). In this case, however, Plaintiff's proposal to clarify its claims would be futile. The deficiencies in Plaintiff's complaint to not stem from inartful or inadequate allegations of fact – rather, Plaintiff's claim is not viable under applicable Texas law.

### CONCLUSION

For all the foregoing reasons, the Court concludes that Plaintiff has failed to state claim for a declaratory judgment based on quasi estoppel. The Court will enter a separate order consistent with this memorandum opinion.

Signed on 09/12/2012

*Brenda T. Rhoades*   SD

HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE